# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

FLOYD E. MCNEAL,

    Plaintiff,

v.

CORRIE L. WRIGHT,

    Defendant.

Case No. 17-4008-DDC-KGS

## MEMORANDUM AND ORDER

This matter is before the court on defendant Corrie L. Wright's Amended Motion for Summary Judgment (Doc. 34). Defendant filed her amended motion on June 19, 2018. The same day, the court required defendant, under D. Kan. Rule 56.1(f), to "serve and file as a separate document, together with the papers in support of the motion, [a] 'Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment' with the full texts of Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 attached."[1] Defendant electronically served and filed this notice on June 22, 2018 (Doc. 37). Once served, pro se plaintiff[2] Floyd E. McNeal had 21 days to respond to defendant's dispositive motion. *See* D. Kan. Rule 6.1(d)(2). On July 23, 2018, the court issued a

---

[1] Rule 56.1 requires "[a]ny represented party moving for summary judgment against a party proceeding pro se" to serve and file these documents.

[2] Because plaintiff proceeds pro se, the court construes his filings liberally and holds them to "a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."); *see also Clark v. Oklahoma*, 468 F.3d 711, 713 n.1 (10th Cir. 2006). But the court does not become an advocate for the pro se party. *See Hall*, 935 F.2d at 1110. Likewise, plaintiff's pro se status does not excuse him from complying with the court's rules or facing the consequences of noncompliance. *See Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

Notice and Order to Show Cause why it should not consider and rule on defendant's motion as an uncontested one under D. Kan. Rule 7.4(b) (Doc. 38). The court required plaintiff to respond on or before August 10, 2018. The record reflects that plaintiff never responded to defendant's motion or the court's order.

Because plaintiff has not responded to defendant's summary judgment motion, the court may "consider and decide the motion as an uncontested motion." *See* D. Kan. Rule 7.4(b). "Ordinarily, the court will grant the motion without further notice." *Id.* But a party's failure to respond to a summary judgment motion—alone—is not a sufficient basis on which to enter judgment. *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Instead, the court must determine whether judgment for the moving party is appropriate under Fed. R. Civ. P. 56. *Id.* Therefore, the court considers the merits of defendant's summary judgment motion below.

But because plaintiff failed to file a response, he "waives the right to respond or to controvert the facts asserted in [defendant's] summary judgment motion." *Reed*, 312 F.3d at 1195. Thus, the court accepts as true all material facts asserted and properly supported in defendant's summary judgment motion, as identified in the analysis below. *Id.*

For reasons explained below, the court grants defendant's motion for summary judgment.

## I.     Uncontroverted Facts

On January 25, 2017, plaintiff filed a Complaint asserting claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); 42 U.S.C. § 1983; section 11301 of the Homeless Assistance Act, 42 U.S.C. § 11301 *et seq.*; and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Doc. 1. Plaintiff asserted these claims against defendants Terica Henry, Corrie L. Wright, and Valeo Behavioral Health Care ("Valeo").

The following facts either have been stipulated by the parties in the Pretrial Order (Doc. 30) or are uncontroverted.

Plaintiff alleges that he has experienced "severe persistent mental health problem[s]" his whole life. Doc. 1 at 4; *see also* Doc. 34 at 1. He contends that defendant denied him service when he tried to apply for two programs, Rapid Re-Housing and Shelter Plus Care. The City of Topeka, Kansas, administers both programs. Doc. 34 at 3 (citing Docs. 34-6, 34-12).

The parties have stipulated to the following facts. Defendant is the Director of Housing Services for the City of Topeka Department of Neighborhood Relations. She wrote a letter to plaintiff dated January 9, 2017, letting him know that his best opportunity to secure housing was through the Shelter Plus Care program. This letter also informed plaintiff that he must meet the qualifications of being homeless and have one of three other disabilities—severe persistent mental illness, chronic substance abuse, or HIV/AIDS—to qualify for the Shelter Plus Care program. The letter notified plaintiff that if he met those qualifications, he would need to see his case manager for an appropriate referral to the program. The letter also provided plaintiff with Valeo's phone number. The letter informed plaintiff that the City of Topeka did not have temporary or immediate housing available, and it referred plaintiff to the Rescue Mission. Plaintiff did not have a referral for Shelter Plus Care during the time period relevant to this case. Doc. 34 at 2–3; Doc. 30 at 2–3.

Defendant represents in her motion that the City of Topeka Department of Neighborhood Relations administers the Shelter Plus Care program. Doc. 34 at 2 (citing Doc. 34-9). She asserts, "A qualified contracting primary service provider (such as Valeo) must make a determination, and then give a referral to an individual who meets the program requirements of being homeless or suffering from a targeted disability" such as severe persistent mental illness,

chronic substance abuse, or HIV/AIDS. *Id.* at 3 (citing Docs. 34-5, 34-9, & 34-12). Both parties assert that Valeo evaluated plaintiff in January 2017 for severe, persistent mental health problems and homelessness. *Id.* (citing Docs. 34-3, 34-5); Doc. 1 at 4. The parties also represent that Valeo did not refer plaintiff to the Shelter Plus Care program. Doc. 34 at 3; Doc. 1 at 4. Defendant asserts that plaintiff, because he had never secured a referral from Valeo, did not qualify for the Shelter Plus Care program. Doc. 34 at 3 (citing Docs. 34-2, 34-3, 34-11, & 34-12).

## II. Legal Standard

The court may consider uncontested summary judgment motions, but it "cannot grant summary judgment unless the moving party has met its initial burden of production under [Federal Rule of Civil Procedure] 56." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003). The movant must show that "no genuine issue of material fact exists and that [she] is entitled to judgment as a matter of law." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the summary judgment motion is uncontested because the nonmovant has failed to respond within the prescribed time, the non-moving party "waives the right to respond or to controvert the facts asserted in the summary judgment motion." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). If the facts the movant sets out satisfy the summary judgment burden, the court properly can grant the motion. *Id.* Conversely, if the movant's facts fail to meet this burden, the court must deny summary judgment "'even if no opposing evidentiary matter is presented.'" *Id.* (emphasis omitted) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)).

The movant must direct the court to "portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). To fulfill this requirement, the moving party need only "point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).

## III. Analysis

Plaintiff makes several claims against the three defendants he names, as well as organizations his Complaint does not name as defendants. Plaintiff alleges that defendant Ms. Wright—alongside the other two defendants he names—discriminated against him on the basis of gender and disability, violating his equal protection rights. Plaintiff has sued Ms. Wright in her personal capacity. Plaintiff also alleges that the City of Topeka, Kansas,[3] violated his rights under the First and Fourteenth Amendments "to petition the government for redress and due process and equal protection." Doc. 1 at 6. The Complaint mentions § 11301 of the Homeless

---

[3] Plaintiff has not sued the City of Topeka, Kansas, or the United States Department of Housing and Urban Development ("HUD"), though he purports to assert claims against both organizations in his Complaint. If plaintiff intended to sue these two organizations, his Complaint does not comply with Federal Rule of Civil Procedure 10(a).

Rule 10(a) requires a plaintiff to name all parties to the case in the "title" of his or her complaint. Fed. R. Civ. P. 10(a). If a plaintiff fails to comply with Rule 10(a), the court may dismiss his complaint. *Butchard v. Cty. of Doña Ana*, 287 F.R.D. 666, 669 (D.N.M. 2012). Rather than dismiss the Complaint, however, the court simply holds that neither the City of Topeka, Kansas, nor HUD is a party to this case at this time. The court advised plaintiff that he could seek leave to file an amended complaint if he wished to add either organization as a defendant. *See* Docs. 16 at 3 n.2, 19 at 3 n.3; *see also Johnson v. Johnson*, 466 F.3d 1213, 1215 (10th Cir. 2006) (ordering the district court to give a pro se plaintiff "an appropriate opportunity to amend his complaint to name the proper defendants" (citation omitted)); *Reid v. Okla. Pardon & Parole Bd.*, 67 F. App'x 515, 517 (10th Cir. 2003) (affirming district court order finding that no action was pending against defendants not named in the complaint); *Gerlt v. United States*, No. 12-3195-SAC, 2014 WL 554689, at *3 (D. Kan. Feb. 12, 2014) ("[T]his action does not proceed against individuals who are not named as defendants in the caption. . . . Plaintiff may name additional defendants only by filing a complete Amended Complaint in which they are correctly designated."); *Bailey v. Ash*, No. 13-3191-SAC, 2013 WL 6669098, at *2 (D. Kan. Dec. 18, 2013) ("Anyone not named in the caption will not be treated as a defendant.").

Assistance Act, but does not connect that statute to any of the named defendants, the City of Topeka, Kansas, or the United States Department of Housing and Urban Development ("HUD")—both are organizations that are subjects of plaintiff's allegations but not sued in this action. Plaintiff's Complaint seeks the following relief: "a declaratory judgment against all defendants as to all regarding my true diagnosis [and] proper treatment," $50,000 in damages against each defendant sued in her personal capacity, and "an emergency injunction to rapidly rehouse [him] by law." *Id.* at 7.

The court discusses plaintiff's equal protection claims against defendant Ms. Wright, below. In her summary judgment motion, defendant makes arguments based on the Americans with Disabilities Act ("ADA"), the Equal Protection Clause of the Fourteenth Amendment, and the doctrine of qualified immunity. But, despite defendant's thoroughness, the court construes plaintiff's Complaint as one that merely alleges personal capacity, equal protection claims against her under 42 U.S.C. § 1983. *See* Doc. 1 at 6. The court does not construe the Complaint to allege *Bivens* claims or claims under the ADA against defendant Ms. Wright. *See* Doc. 1 at 3, 6; *see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395–97 (1971) (holding that plaintiff was "entitled to recover money damages for any injuries he . . . suffered as a result of [*federal*] agents' [constitutional] violation" (emphasis added)). The summary judgment facts properly establish that defendant Ms. Wright is a state actor—not a federal actor—so, the Complaint fails to state a *Bivens* claim against her. The court thus addresses only defendant's equal protection and qualified immunity arguments, below.

The court begins with plaintiff's equal protection claims. Plaintiff alleges that defendant has "given housing vouchers to women who are homeless but not disabled and women who are disabled and homeless but no[t] to [him] even though [he is] similarly situated to these women."

6

Doc. 1 at 5. Plaintiff also asserts that defendant "has a security guard who confessed to [plaintiff] that he receives housing assistance from [defendant] and he works there"—the court interprets the word "there" to mean that the security guard plaintiff references in his Complaint works in the same place as defendant. *Id.*

Defendant first argues that plaintiff's "allegations that he is 'similarly situated' to women who are homeless and/or disabled who have received housing vouchers" are "conclusory." Doc. 34 at 8. Defendant also directs the court to plaintiff's comparison of himself to a male security guard who allegedly receives housing assistance. Defendant argues that plaintiff's allegations incorporate examples of individuals who purportedly received housing assistance and are male, female, disabled, and not disabled. Defendant asserts that these examples cannot support plaintiff's equal protection claim because he is not similarly situated to the individuals he lists as examples for comparison in his Complaint. Defendant also argues that plaintiff was denied government assistance because, without a referral from Valeo, he had failed to qualify for certain programs, and that he was not denied assistance because of his gender or disability.

"Equal protection is the law's keystone," but the Fourteenth Amendment's Equal Protection Clause "does not forbid classifications." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684–85 (10th Cir. 2012); *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Rather, "[i]t simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger*, 505 U.S. at 10. When alleging a government classification violates the Equal Protection Clause, a plaintiff must demonstrate that the groups being treated differently are "similarly situated." *Michael M. v. Superior Court of Sonoma Cty.*, 450 U.S. 464, 478 (1981) (internal quotations omitted); *see also SECSYS, LLC*, 666 F.3d at 684–85 (The Equal Protection Clause "seeks to ensure that any classifications the law makes are made 'without respect to

persons,' that like cases are treated alike, that those who 'appear similarly situated' are not treated differently without, at the very least, 'a rational reason for the difference.'" (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008))).

Here, the court agrees with defendant: plaintiff has failed to support an essential element of his equal protection claims based on gender and disability. Plaintiff has identified no facts that show that he is similarly situated to the women and man he claims to have received housing assistance. In his Complaint, he asserts that these women were diagnosed as having severe and persistent mental illnesses and were given treatment and housing referrals through the Shelter Plus Care program. Doc. 1 at 4. Plaintiff's Complaint also contends that a male security guard receives housing assistance and works in the same place as defendant. But plaintiff's Complaint never alleges that this security guard has been diagnosed with a mental illness or another disability. *Id.* at 5. But both parties agree that Valeo evaluated plaintiff for severe and persistent mental illness and did not classify him as having such an illness. And though plaintiff alleges that he "notice[d] that there were other people who were similarly situated to [him] regarding [their] disabilities," he provides no support for these allegations. He does not explain how he is similarly situated in all relevant ways to the women and man he says received housing assistance. The court recognizes at least one salient difference between plaintiff and the individuals he references in his Complaint: Valeo did not classify plaintiff as having a severe and persistent mental illness, but plaintiff alleges that the individuals who received housing assistance were women diagnosed with such illnesses and a man whom plaintiff has not shown— or alleged—was diagnosed with a mental illness or other disability.

The court also considers defendant's qualified immunity defense. Defendant asserts in her summary judgment motion that she has qualified immunity from the suit in this case because

she was acting within the scope of her employment. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The plaintiff bears the burden of establishing both (1) that the defendant violated a constitutional right and (2) that the right had been clearly established by the time of the violation." *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015). And the Tenth Circuit has held that, if a party fails to establish that the conduct in question "amounted to a violation of the law," the court "need not reach the issue of whether the law was clearly established at the time" of the alleged violation. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993); *see also Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998))).

Here, because the court concludes that plaintiff has not supported an essential piece of his equal protection claims, it agrees with defendant. She is entitled to qualified immunity. Under the first of the two requirements plaintiff must satisfy to challenge defendant's qualified immunity from suit, plaintiff bears the burden to demonstrate that defendant violated his constitutional rights. But, as discussed above, the court determines that plaintiff has failed to adduce admissible evidence supporting facts that could support his claims that defendant violated his constitutional rights. Thus, the court declines to consider whether the constitutional right in

question was established clearly at the time of the alleged violation and concludes that defendant has qualified immunity from suit here.

The court also holds that defendant sufficiently has identified plaintiff's lack of evidence on an essential element of his equal protection claims—*i.e.*, that he is similarly situated to the individuals he says received housing assistance. Defendant is entitled to qualified immunity from this suit because of plaintiff's failure to support his claims of constitutional violations. The court thus concludes that the facts defendant provides in her uncontroverted motion satisfy the burden she bears for summary judgment.

## IV. Conclusion

For reasons explained, the court grants defendant Corrie L. Wright's Motion for Summary Judgment. The court concludes that plaintiff has failed to support an essential element of his equal protection claims and, in any event, that defendant is entitled to qualified immunity from this suit.

**IT IS THEREFORE ORDERED THAT** defendant Corrie L. Wright's Amended Motion for Summary Judgment (Doc. 34) is granted.

**IT IS SO ORDERED.**

**Dated this 9th day of November, 2018, at Kansas City, Kansas.**

                                              **s/ Daniel D. Crabtree**
                                              **Daniel D. Crabtree**
                                              **United States District Judge**